Edwin Aiwazian (Cal. State Bar No. 232943)
*edwin@lfjpc.com*
Jill J. Parker (Cal. State Bar No. 274230)
*jill@lfjpc.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone:   (818) 265-1020
Facsimile:    (818) 265-1021

*Attorneys for* Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS FRANKE; individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ANDERSON MERCHANDISERS LLC, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  2:17-cv-03241-DSF-AFM<br><br>Honorable Dale S. Fischer<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          June 12, 2017<br>Time:         1:30 p.m.<br>Courtroom:  7D<br><br>Complaint Filed:  March 17, 2017<br>Trial Date:          None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **June 12, 2017** at **1:30 p.m.**, or as soon thereafter as may be heard in Courtroom 7D of the United States Courthouse, located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiff Phyllis Franke ("Plaintiff") will and hereby does move for an order remanding this action to the Superior Court for the County of Ventura.

Plaintiff moves for remand pursuant to 28 U.S.C. § 1447 on the ground that this Court does not have removal jurisdiction over this case. Defendant Anderson Merchandisers LLC ("Defendant") did not meet its burden to establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) as it failed to prove to a legal certainty that the amount in controversy for Plaintiff's claims exceeds $75,000. Further, Defendant failed to prove by a preponderance of the evidence that the total amount in controversy exceeds the sum of $5,000,000 as required for jurisdiction under the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d). As a result, Plaintiff seeks remand to the Superior Court for the County of Ventura.

This motion is made following counsel for Plaintiff meeting and conferring with counsel for Defendant pursuant to Local Rule 7-3, which took place on May 3, 2017.

Plaintiff's Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Jill J. Parker, any documents Plaintiff may subsequently file, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

Dated: May 11, 2017                              **LAWYERS _for_ JUSTICE, PC**


                                             By: /s/ Jill J. Parker _____
                                                 Jill J. Parker
                                                 _Attorneys for_ Plaintiff

# **TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................1

II.    STATEMENT OF FACTS ....................................................................2

III.   LEGAL STANDARD............................................................................3

IV.   ARGUMENT .......................................................................................4

      A.    Defendant Fails to Establish that the Amount in Controversy Requirement for Traditional Diversity Jurisdiction is Satisfied...................4

           1.    Defendant's Calculation of Section 17206 Penalties Must Be Rejected as Plaintiff Does Not Seek these Penalties in Her Complaint ...................................................................................4

           2.    Defendant's Calculation of Unpaid Overtime, Meal Premiums, and Rest Premiums are Grounded in Speculation.................................6

           3.    Defendant's Inflated Attorneys' Fees Estimate is Unsupported and is Inconsistent with its CAFA Fees Estimate ...................................7

      B.    Defendant Further Fails to Establish that the Amount in Controversy Requirement for CAFA is Satisfied............................................................10

           1.    Defendant Did Not Provide Competent Evidence of the Number of Putative Class Members, Actual Workweeks, and Average Rate of Pay ..............................................................................10

           2.    Defendant Provides No Evidence Whatsoever to Support Its Overtime Calculations...................................................................12

           3.    Defendant's Meal and Rest Break Premium Calculations are Unsupported As Well ............................................................16

           4.    Defendant's Maximum Penalty Calculations with Respect to Wage Statement Penalties and Waiting Time Penalties are Also Improper ........................................................................20

                a.   Plaintiff's Complaint Does Not Put Maximum Wage Statement Penalties in Controversy ...............................................20

                b.   Likewise, Plaintiff's Complaint Does Not Put in Issue Maximum Waiting Time Penalties .........................................21

            5.    Defendant's Minimum Wage Penalty Calculations are Deficient.......23

           6.    Defendant's Attorneys' Fee Estimate Must Also be Rejected............24

1

V.      CONCLUSION ....................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Medical Staffing Network Healthcare, LLC*, 2013 U.S. Dist. LEXIS 172483 (E.D. Cal. Dec. 5, 2013) .......................................................................................22

*American Guaranty Co. v. Caldwell*, 72 F. 2d 209 (9th Cir. 1934) .............................5

*Amoche v. Guarantee Trust Life Insurance Company*, 556 F.3d 41 (1st Cir. 2009) ....16

*Birkenbuel v. M.C.C. Constr. Corp.,* 962 F. Supp. 1305 (D.Mont. 1997) ...................16

*Brown v. Rosebud*, 2016 U.S. Dist. LEXIS 56904 (C.D. Cal., Apr. 28, 2016)...........3, 6

*Conrad Associates v. Hartford Accident & Indemnity Co.,* 994 F.Supp. 1196 (N.D. Cal. 1998) ......................................................................................................4

*Ellis v. Pac. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 16045  (C.D. Cal. Feb. 10, 2011) ...4

*Evans v. Walter Indus., Inc.,* 449 F.3d 1159 (11th Cir. 2006) .....................................16

*Foltz v. Integon Nat'l Ins. Co.*, 2014 U.S. Dist. LEXIS 141488 (E.D. Cal. Oct. 2, 2014) ....................................................................................................................8

*Gallegos v. Comerica Bank*, 2011 U.S. Dist. LEXIS 82735 (C.D. Cal., Jul. 27, 2011) .7

*Gallegos v. Comerica*, 2011 U.S. Dist. LEXIS 82735  (C.D. Cal. Jul. 27, 2011) ..........8

*Garibay v. Archstone Communities, LLC*, 2013 U.S. App. LEXIS 17923 (9th Cir. 2013)..................................................................................................................21

*Hernandez v. Towne Park, Ltd.*, 2012 U.S. Dist. LEXIS 86975 (C.D.Cal. June 22, 2012)....................................................................................................................8

*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)......................3, 18

*Jones v. ADT Sec. Servs., Inc.*, 2012 U.S. Dist. LEXIS 558 (C.D. Cal, Jan. 3, 2012)....7

*Kanter v. Warner-Lambert Co.*, 265 F. 3d 853 (9th Cir. 2001) .....................................7

*Longmire v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 167463 (S.D. Cal. Nov. 26, 2012)..................................................................................................................22

*Lopez v. Source Interlink Cos.*, 2012 U.S. Dist. LEXIS 44288 (E.D. Cal. Mar. 28, 2012)..................................................................................................................15

*Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F. 3D 994 (9th Cir. 2007)...................21, 22

*Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260  (C.D. Cal. Apr. 19, 2000).......4

*Nasiri v. Allstate Indem. Co.*, No. 00-17443, 2002 WL 1453730 (9th Cir. Jul. 3, 2002)7

*Nolan v. Kayo Oil Co.*, 2011 U.S Dist. LEXIS 72256 (N.D. Cal. Jul. 6, 2011) ...........15

*People v. First Federal Credit Corp.*, 104 Cal. App. 4th 721 (2002) ............................5

*Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657 (C.D. Cal. 2011)...................15

*Rhoades v. Progressive Casualty Insurance Co.*, 2010 U.S. Dist. LEXIS 111026 (E.D. Cal. Oct. 7, 2010) ........................................................................................................22

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F. 3d 975 (9th Cir. 2013) .......................3

*Ruby v. State Farm Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 88812 (N.D. Cal. Aug. 4, 2010).............................................................................................................................19

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996) .............................3

*Scalzo v. Allied Property and Casualty Insurance Co.*, 2011 U.S. Dist. LEXIS 75721 (E.D. Cal. Jul. 11, 2011)....................................................................................................8

*Tompkins v. C & S Wholesale Grocers, Inc.*, 2012 U.S. Dist. LEXIS 24943 (E.D. Cal., Feb. 27, 2012)..................................................................................................................6

*Vigil v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 112928 (N.D. Cal. Aug. 10, 2012).............................................................................................................................15

*Wastier v. Schwan's Consumer Brands*, 2007 U.S. Dist. LEXIS 89441 (S.D. Cal. Dec. 5, 2007)............................................................................................................................8

*Weston v. Helmerich & Payne International Drilling Co.*, 2013 U.S. Dist. LEXIS 132930 (E.D. Cal. Sep. 16, 2013) ............................................................10, 19, 22

**Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................................................2

Cal. Lab. Code § 1174 ......................................................................................................2

Cal. Lab. Code § 1194 ......................................................................................................2

Cal. Lab. Code § 1197 ......................................................................................................2

Cal. Lab. Code § 1197.1 ...................................................................................................2

Cal. Lab. Code § 1198 ......................................................................................................2

Cal. Lab. Code § 201 ........................................................................................................2

Cal. Lab. Code § 202 ........................................................................................................2

Cal. Lab. Code § 226 ........................................................................................................2

Cal. Lab. Code § 226.7 .....................................................................................................2

Cal. Lab. Code § 2802 ......................................................................................................2

Cal. Lab. Code § 510 ........................................................................................................2

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Cal. Lab. Code § 512 ........................................................................................................2

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Anderson Merchandisers LLC ("Defendant") removed this action by asserting that the requirements for jurisdiction under both traditional diversity jurisdiction and the Class Action Fairness Act ("CAFA") are satisfied.  Defendant contends that the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332(a) for diversity jurisdiction and that it also exceeds $5,000,000 as required for CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d).   However, Defendant's calculations are based entirely upon self-serving assumptions that lack adequate evidentiary support and are tantamount to impermissible speculation.  Not only does Defendant pluck violation rates from thin air, but **Defendant's declarant admits that Defendant does not have access to personnel data prior to 2014**, **admits that it does not have access to payroll data prior to 2015**, and that it has made assumptions about the number of class members, rates of pay, and number of workweeks based on just the portion of the class period for which it does have access to data.  Egregiously, **Defendant calculates penalties not even sought in Plaintiff's complaint** – and for which no private right of action exists – all in order to inflate the amount in controversy in its attempt at forum shopping.   Defendant makes **mathematical errors** in its calculations, and insists on using averages for days and workweeks at issue rather than use *actual* days and workweeks worked.

Defendant, as the employer, should have access to the data that could be used to calculate actual violation rates for Plaintiff and the putative class members.  Rather than provide this data, Defendant asks the Court to take its guesses about the number of unpaid overtime hours and unpaid meal and rest period premiums as sufficient to confer federal jurisdiction.  It also asks this Court to assume – without any evidence – that maximum penalties are at issue for waiting time penalties, wage statement penalties, and minimum wage penalties.  It is precisely this type of conjecture about violation rates that the Ninth Circuit has held to be insufficient to establish the

amount in controversy.  As a result, Defendant has failed to meet its burden, and Plaintiff respectfully requests that this Court remand this case to the Superior Court for the County of Ventura.

## II.  STATEMENT OF FACTS

Plaintiff filed this action on March 17, 2017 in the Superior Court for the County of Ventura.  Plaintiff's Complaint contains ten causes of action for: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code § 204 (wages not timely paid during employment); (7) violation of California Labor Code § 226(a) (non-compliant wage statements); (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (10) violation of California Business & Professions Code § 17200, et seq.

The Complaint defines the proposed class as:

All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment.

(Dkt. No. 1-1, Complaint, ¶ 13).

On April 28, 2017, Defendant filed its notice of removal.  (Dkt. No. 1).  On May 3, 2017, Plaintiff's counsel sent a meet and confer letter to Defendant's counsel regarding Defendant's amount in controversy calculations.  (Parker Decl., Exh. A). Plaintiff's counsel explained that they believed Defendant failed to establish the amount in controversy for Plaintiff to a legal certainty, and further failed to establish

1    the amount in controversy for the proposed class by a preponderance of the evidence.

2    Plaintiff invited Defendant to apprise them of their availability to discuss the matter

3    further, and requested that Defendant inform them by the close of business on May

4    10, 2017 as to whether Defendant would agree to withdraw its notice of removal.   To

5    date, Defendant has not provided any response to Plaintiff's attempt to meet and

6    confer.  (Parker Decl. ¶ 3).  As a result, this motion to remand was necessary.

7    **III. LEGAL STANDARD**

8         Defendant is required to establish the amount in controversy to a legal certainty

9    in order for the Court to have traditional diversity jurisdiction over this case.   *Brown v.*

10   *Rosebud*, 2016 U.S. Dist. LEXIS 56904, *4 (C.D. Cal., Apr. 28, 2016).  "The amount

11   in controversy is determined from the complaint itself unless it appears to a legal

12   certainty that the claim is worth a different amount than that pled in the complaint."

13   *Id.*  Here, Plaintiff alleged that the amount in controversy for her individual claims,

14   including interest and attorneys fees, is less than $75,000.   (Dkt. No. 1-1, ¶ 1).

15   Accordingly, Defendant bears the burden of establishing to a legal certainty that the

16   amount in controversy for Plaintiff's individual claims exceeds $75,000.

17        As Defendant also seeks to remove this case pursuant to CAFA, it is required to

18   demonstrate by a preponderance of the evidence that the amount in controversy for the

19   putative class exceeds $5 million.  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F. 3d

20   975, 977 (9th Cir. 2013).   Under this burden, a defendant must provide evidence

21   establishing that it is 'more likely than not' that the amount in controversy exceeds that

22   amount."  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  In

23   a removal jurisdictional dispute, the defendant has not only "the burden to put forward

24   evidence showing that the amount in controversy exceeds $5 million," but also the

25   burden "to persuade the court that the estimate of damages in controversy is a

26   reasonable one."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

27   Thus, a removing party "cannot establish removal jurisdiction by mere speculation and

28   conjecture, with unreasonable assumptions."  *Id.*

A defendant "may rely on calculations to satisfy [its] burden so long as [its] calculations are good faith, reliable estimates based on the pleadings and other evidence in the record." *Ellis v. Pac. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 16045, *5 (C.D. Cal. Feb. 10, 2011). It is well-settled in the Ninth Circuit that "[a] speculative argument regarding the potential value of the [amount in controversy] is insufficient." *Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260, *3 (C.D. Cal. Apr. 19, 2000) (quoting *Conrad Associates v. Hartford Accident & Indemnity Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. Feb. 10, 1998).).

## IV. ARGUMENT

### A. Defendant Fails to Establish that the Amount in Controversy Requirement for Traditional Diversity Jurisdiction is Satisfied

#### 1. *Defendant's Calculation of Section 17206 Penalties Must Be Rejected as Plaintiff Does Not Seek these Penalties in Her Complaint*

Defendant asserts that, pursuant to Plaintiff's tenth cause of action, there is $7,500 in controversy for penalties under section 17206 of the California Business and Professions Code. (Dkt. No. 1, ¶ 29). **Nowhere in Plaintiff's Complaint are section 17206 penalties referenced, let alone prayed for.** Plaintiff's tenth cause of action is brought pursuant to California Business & Professions Code section 17200 for unfair competition. In her tenth cause of action, Plaintiff alleges:

> Plaintiff and the other class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences from four years preceding the filing of this Complaint; an award of attorneys' fees pursuant to California Code of Civil procedure section 1021.5 and other applicable laws; and an award of costs. (Dkt. No. 1-1, ¶ 116).

There is no mention whatsoever of penalties in the tenth cause of action. Nor does the relief prayed for with respect to the tenth cause of action reference penalties of any kind. (Dkt. No. 1-1, Prayer ¶¶ 53-58). Accordingly, the $7,500 that Defendant

4

calculates for section 17206 penalties is not put in controversy by Plaintiff's complaint.

Nor could Plaintiff seek to recover penalties under section 17206 even if she had put them in controversy – which she did not. *People v. First Federal Credit Corp.*, 104 Cal. App. 4th 721, 732 (2002) ("civil penalties under [sections 17206, subd. (a), 17536, subd. (a).] are only imposed in actions brought by public law enforcement officials, not by private litigants."). There is no private right of action for these penalties, as Defendant itself acknowledges. (Dkt. No. 1, ¶ 29). However, to bolster its calculations, Defendant cites a Ninth Circuit case from 1934 that has nothing to do with the UCL. In *American Guaranty Co. v. Caldwell*, 72 F. 2d 209, 210 (9th Cir. 1934), an award of $32,500 was made in arbitration. When the prevailing party sought to obtain a confirmation of the award in the superior court, it was removed. *Id.* Subsequently, after a new arbitration, the arbitrators determined that neither party should be awarded anything. *Id.* After a number of motions and orders to vacate the award, one of the parties appealed, and asserted that the district court was without jurisdiction because the award was for less than $3,000. *Id.* at 211. However, because the original award was for $32,500, and there was evidence that damages were in excess of $100,000, the district court had jurisdiction. *Id.* This is the context for the quote proffered in Defendant's removal: "It is the amount in controversy which determines jurisdiction, not the amount of the award." *Id.* at 211; Ntc. of Removal, ¶ 29. But here, because section 17206 penalties are not sought in the Complaint, they are simply not in controversy.

Defendant has not cited any authority stating that penalties that are neither referenced nor prayed for in a complaint can be included in the amount in controversy. Taken to its logical conclusion, Defendant's argument would mean that *any* possible damages that could be recovered under any law – though not pleaded – could be included in the amount in controversy. Defendant could attempt to assess damages for wrongful termination or discrimination even though no such claims are made, all in order to forum shop and secure federal court jurisdiction. Such a result cannot lie in

light of the "'strong presumption' against removal jurisdiction." *Brown*, 2016 U.S. Dist. LEXIS 56904 at *2.

> ## 2.   *Defendant's Calculation of Unpaid Overtime, Meal Premiums, and Rest Premiums are Grounded in Speculation*

Defendant assumes that on each day that Plaintiff recorded working 8 hours, she also worked one half hour of overtime that was unpaid.  (Dkt. No. 1, ¶ 21).  Defendant further assumes that Plaintiff was not provided with a compliant meal period on 50% of all meal period eligible shifts, and that Plaintiff was not provided with a compliant rest period on 50% of all rest period eligible shifts.    (*Id.* at ¶¶ 23, 26).   While these estimates might seem conservative in the abstract, they require the Court to assume that Plaintiff worked 2.5 hours of unpaid overtime, missed 2.5 meal periods, and missed 2.5 rest periods each week in which Plaintiff worked five 8-hour days.[1] Without some evidence of the actual amount in controversy for unpaid overtime, meal premiums, and rest premiums, Defendant's arbitrary violation rates do not meet the stringent legal certainty standard.

Defendant's use of unsupported violation rates is similar to those proffered by the defendant employer in *Tompkins v. C & S Wholesale Grocers, Inc.*, 2012 U.S. Dist. LEXIS 24943 (E.D. Cal., Feb. 27, 2012).   There, the employer assumed that the plaintiff worked 15 minutes of overtime each day, and missed a meal and rest break each day.  In concluding that Defendant's estimate failed to meet the legal certainty standard, the Court explained that "Defendants provide[d] no evidence establishing either how they reached the fifteen minutes per day number or the frequency with which Plaintiff was denied a second meal period." *Id.* at *17.  "With no evidentiary basis, there is no reason why a figure of [fifteen] minutes of overtime . . . would have

---

[1] Of course, there is no such thing as a "half" violation.  A break is either compliant with the Labor Code or it is not.  Defendant's use of a 50% violation rate for its meal and rest break calculations only underscores the arbitrary nature of its estimates and the fact that they are not grounded in reality.

1   any more or less legitimacy than the two hour figure." *Id.* at *17; *see also Jones v.*
2   *ADT Sec. Servs., Inc.*, 2012 U.S. Dist. LEXIS 558, *12 (C.D. Cal, Jan. 3, 2012)
3   (" With no evidentiary basis, there is no reason why a figure of 20 minutes of overtime
4   or 20 hours of overtime would have any more or less legitimacy than the two hour
5   figure."); *see also Gallegos v. Comerica Bank*, 2011 U.S. Dist. LEXIS 82735, *35
6   (C.D. Cal., Jul. 27, 2011) (relying on plaintiff's declaration testimony that "she 'almost
7   never' took rest breaks'" and it was "extremely rare" for her to take meal breaks was
8   insufficient to support Defendant's calculation of 3 missed rest periods per week and 3
9   missed meal periods per week).

10          Here too, Defendant's arbitrary assumptions regarding unpaid overtime and meal
11  and rest period premiums are simply insufficient to meet its burden of providing
12  summary judgment type evidence establishing to a legal certainty that the amount in
13  controversy exceeds $75,000.

14                  *3.  Defendant's Inflated Attorneys' Fees Estimate is Unsupported and is*
15                      *Inconsistent with its CAFA Fees Estimate*

16          In attempting to satisfy the amount in controversy for diversity jurisdiction,
17  Defendant cannot include attorneys' fees incurred on behalf of the entire putative class.
18  *Kanter v. Warner-Lambert Co.*, 265 F. 3d 853, 858 (9th Cir. 2001) ("any potential
19  attorneys' fees award in this class action cannot be attributed solely to the named
20  plaintiffs for purposes of amount in controversy").  Despite acknowledging this fact in
21  its removal, Defendant asserts there is $70,000 in controversy for Plaintiff's attorneys'
22  fees.  **Defendant failed to submit any supporting evidence for its fee calculations**.
23  For example, Defendant failed to submit an itemized list of attorneys' fees likely to be
24  incurred based on its experience in similar cases.  *See Nasiri v. Allstate Indem. Co.*,
25  No. 00-17443, 2002 WL 1453730, at *1 (9th Cir. 2002); *see also Conrad Associates v.*
26  *Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. Feb. 10,
27  1998) (rejecting fees estimate where defendant failed to estimate how much time each
28  major task in litigation would take, it was too speculative to assume that every hour

would be billed by one attorney at that attorney's hourly rate, and where fees estimate included fees incurred after removal); *Hernandez v. Towne Park, Ltd.*, 2012 U.S. Dist. LEXIS 86975, at *73 (C.D.Cal. June 22, 2012) ("Towne Park adduces no evidence that a fee award of more than $20,000 would be reasonable in the context of Hernandez's individual claims."). No such evidence is submitted to support its allegation of reasonable attorneys' fees, and therefore Defendants has not satisfied its burden of proof.

Defendant's fees estimate is also problematic because it includes fees *not yet incurred* at the time of removal. District Courts throughout California have split on whether future attorneys' fees may be included in the amount in controversy. *Gallegos v. Comerica*, 2011 U.S. Dist. LEXIS 82735, *45-46 (C.D. Cal. Jul. 27, 2011) (collecting cases); *see also Scalzo v. Allied Property and Casualty Insurance Co.*, 2011 WL 2709001, 2011 U.S. Dist. LEXIS 75721, *10 (E.D. Cal. Jul. 11, 2011) ("Defendant's prediction that an award of attorney fees could be significant is too vague to establish subject matter jurisdiction"); *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. Feb. 10, 1998) ("Defendant's contention that attorney fees are likely to total at least $20,000 is too speculative to support its burden of establishing jurisdiction by a preponderance of the evidence.")

"Unlike prospective attorneys' fees, future damages such as lost income relate back to the original injury or harm. In contrast, attorney's fees are in the control of the client and counsel and may be avoided or accrue over years depending on legal strategy." *Foltz v. Integon Nat'l Ins. Co.*, 2014 U.S. Dist. LEXIS 141488, *8 (E.D. Cal. Oct. 2, 2014) (citation omitted); *see also Wastier v. Schwan's Consumer Brands*, 2007 U.S. Dist. LEXIS 89441, at *9 (S.D. Cal. Dec. 5, 2007) ("Defendants' estimate of Plaintiffs' fees for activities anticipated but not yet performed, even if accurate, may be irrelevant.")

Moreover, **Defendant's assertion that there is $70,000 in controversy for**

**Plaintiff's individual attorneys' fees is completely inconsistent with its estimate of attorneys' fees under CAFA**.  Defendant asserts that there is $1,409,742.40 in attorneys' fees that is at issue for the putative class as a whole.  (Dkt. No. 1, ¶ 66).  Dividing this figure by the 597 putative class members who Defendant asserts were employed between January 1, 2014 and March 17, 2017, results in just $2,361.37 in attorneys fees per class member – including Plaintiff.[2]  (Dkt. No. 1-3, Adams Decl., ¶ 4).

     Finally, Defendant's suggestion in a footnote that Plaintiff's counsel should stipulate in writing to a lesser cap on attorneys' fees is inappropriate.  (Dkt. No. 1, fn. 3).  "[S]ince a defect in subject matter jurisdiction cannot be stipulated to or waived, attempting to force the plaintiff to enter a stipulation regarding the potential amount of damages would serve no effect in determining the actual amount in controversy at the time for removal."  *Conrad Associates v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal., Feb. 10, 1998); *see also Rodriguez v. Home Depot, U.S.A., Inc.*, 2016 U.S. Dist. LEXIS 941, *12 (N.D. Cal., Jul. 19, 2016) ("In this District, courts 'have consistently rejected the notion that a plaintiff's refusal to stipulate conclusively demonstrates that the amount in controversy exceeds the threshold.'"); *Bloomer v. Serco Mgmt. Servs.*, 2016 U.S. Dist. LEXIS 125973, *7 (C.D. Cal. Sept. 15, 2016) ("There is no requirement that Plaintiff stipulate to a lesser amount of damages, and the Court will not penalize Plaintiff for failing to do so."); *Richwood v. Brinker Int'l Payroll Co.*, L.P., 2016 U.S. Dist. LEXIS 56271, n. 2 (C.D. Cal., Apr. 26, 2016) ("The Court also does not find significant Plaintiff's refusal to stipulate that the amount of damages is below the jurisdictional limit."); *Taylor v. Interstate Grp, LLC*,  2016 U.S. Dist. LEXIS 29673, at *26 (N.D. Cal. Mar. 7, 2016) ("Defendant proffers no case in which a plaintiff's refusal to stipulate, without more, persuaded a court to deny a motion to remand.")

---

[2] $1,409,742.40 ÷ 597 = $2,361.38

1    As eliminating Defendant's attorneys' fee calculation causes Defendant's total

2    calculation to fall below $75,000, diversity jurisdiction does not exist, and this case

3    should be remanded.

4              **B.    Defendant Further Fails to Establish that the Amount in**

5                     **Controversy Requirement for CAFA is Satisfied**

6              *1.    Defendant Did Not Provide Competent Evidence of the Number of*

7                    *Putative Class Members, Actual Workweeks, and Average Rate of*

8                    *Pay*

9        Defendant's CAFA calculations are rendered unreliable at the outset due to the

10   fact that **Defendant is missing data from the entire putative class**.  Defendant makes

11   calculations of the number of putative class members, average rate of pay, and number

12   of workweeks based on an incomplete data set.  Defendant admits that it "was not able

13   to access personnel data prior to 2014" because Defendant "no longer retains easily

14   accessible data maintained on the prior database, and data prior to 2014 would take

15   substantially more time to access."  (Dkt. No. 1-3, ¶ 3).  Defendant also was unable to

16   access payroll data prior to 2015 because it too "no longer retains easily accessible"

17   pay data.  (*Id.* at ¶ 7).  Defendant goes on to make its calculations based on various

18   snapshots of data from 2015, 2016, and 2017.

19       By way of example, Defendant calculates the average rate of pay ($15.44) by

20   looking at data only from March 17, 2015 to March 17, 2017.  (Dkt. No. 1, ¶ 52; Dkt.

21   No. 1-3, ¶ 8).  There is simply no basis to assume that taking an average from this two

22   year period is an accurate estimate of the average rate of pay for the entire four year

23   class period.  *See Weston v. Helmerich & Payne International Drilling Co.*, 2013 WL

24   5274283, 2013 U.S. Dist. LEXIS 132930, *16 (E.D. Cal. Sep. 16, 2013) (in rejecting

25   averages provided by employer's declarant, court concluded "that using an average

26   merely ensures that the calculations are inaccurate for virtually every employee.  It is

27   unclear why the actual figures could not have been used and damage estimates still

28   achieved expeditiously….")

Further, Defendant fails to provide the number of actual workweeks worked by putative class members.  Defendant asserts the number of workweeks from January 1, 2016 to April 15, 2017 is 1,712, and then attempts to extrapolate this number across the entire class period. (Ntc. of Removal, ¶ 52).  As discussed *infra*, there is no evidence that this is a reliable estimate of the number of workweeks worked throughout the entire class period.[3]  Moreover, in arriving at 1,712 workweeks for the period from January 1, 2016 to April 15, 2017, Defendant fails to take into account vacation days, sick days, and other leaves of absences taken by class members.  Increasing the uncertainty of Defendant's calculations is its assertion that, during the period from January 1, 2016 to April 15, 2017 there were "8,560 *potential* days."  (Ntc. of Removal, ¶ 52) (emphasis added).

Nowhere does Defendant even provide the number of putative class members for the entire proposed class period.  This data is necessary foundation for removal calculations, and the fact that Defendant cannot even provide this basic information makes clear that it has not borne its burden of proving the amount in controversy with summary judgment type evidence.

The evidence that Defendant could provide, but chose not to, is the kind of information available to Defendant through payroll records which Defendant is statutorily required to maintain.  Nevertheless, Defendant provided none of this information, which leaves Plaintiff and the Court to take Defendant's word and presume that all data created, relied upon, and vaguely referred to is complete and accurate.  This is disconcerting especially in light of the fact that Plaintiff's Complaint alleges that Defendant failed to properly maintain payroll records in violation of California Labor Code Section 1174(d).

As the figures provided in Defendant's removal are not competent, summary judgment type evidence, all of Defendant's derivative calculations should be

---

[3] Additionally, Defendant's workweek estimate is not supported by the declaration of Raquel Adams.

1    disregarded.

2              2.   *Defendant Provides No Evidence Whatsoever to Support Its*

3                   *Overtime Calculations*

4          Defendant asserts that during the period from January 1, 2016 to April 15, 2017

5    there were 1,712 workweeks, and multiplies this number by five to arrive at 8,560

6    "potential days[] when a putative class member worked an average of eight hours or

7    more per day."  (Dtk. No. 1, ¶ 52).   Defendant then assumes that one hour of unpaid

8    overtime was worked on every single one of these 8,560 days.  Without providing any

9    breakdown of its calculation, Defendant assets that there is $259,392 in controversy for

10   unpaid overtime during the period from January 1, 2016 to April 15, 2017.[4] (*Id.* at ¶

11   52). **Defendant's calculation is incorrect**:

12         $15.44 "average hourly rate" × 1.5 × 1 hr unpaid overtime × 8,560 days =

13         $198,249.60

14   It is unclear how Defendant concluded that $259,392 is in controversy for these 8,560

15   "potential days."

16         Moreover, **nowhere in the declaration of Raquel Adams does she state that**

17   **there were 1,712 weeks worked** during the period from January 1, 2016 to April 15,

18   2017.  Defendant's removal cites to paragraph 11 of Ms. Adams declaration as support

19   for this 1,712 figure, but paragraph 11 makes no mention of 1,712 weeks.  Instead,

20   paragraph 11 states that during the period from January 1, 2016 to April 15, 2017,

21   "there were 1,120 times where an employee's daily average hours worked during a pay

22   period was 7.9 or higher."  (Dkt. No. 1-3, ¶ 11).  Although it is extremely problematic

23   that the workweek figure in Defendant's removal is not supported by its declarant, Ms.

24   Adams goes on to make troubling assumptions regarding her alternative facts.  Ms.

25   Adams states that because Defendant's pay periods were biweekly, this same time

26

27   [4] ($15.44 "average hourly rate" × 1.5) × 1 hr unpaid overtime × 8,560 days = $198,249.60.  It
     is unclear how Defendant concluded that $259,392 is in controversy for these 8,560 "potential
28   days."

period "reflects approximately 2,240 weeks with daily average hours worked of 7.9 or higher." (*Id.*) Defendant does not provide any facts as to why it is reasonable to assume that, because there were purportedly 1,120 times where the "average" hours in a pay period were 7.9 or higher, that that figure should be doubled to account for the number of weeks in each pay period. There is no reason why Defendant has to make these averages and speculate regarding the number of days when 7.9 hours or more were worked when Defendant has ready access to the *actual* number of days – unless it is because the data does not support the conclusion that more than $5 million is in controversy.

Returning to Defendant's unexplained and faulty calculation of $259,392 in controversy for 8,560 days, Defendant asserts that this period of time represents "five quarters," and divides $259,392 by five to arrive at an estimate of $51,878.40 per quarter. (Dkt. No. 1, ¶ 52). Finally, Defendant multiplies $51,878.40 by four quarters per year by four years in the proposed class period to arrive at $830,054.40. (*Id.*).

Defendant's methodology is unsound. Defendant's failure to access payroll records for the entire proposed class period does not give it license to make assumptions based on a snapshot of data – that is itself unreliable because it is not based on actual workweeks worked – for the entire proposed class period. There is simply no basis proffered by Defendant to assume that *estimates* of the number of workweeks and *averages* of rates of pay from a *limited portion of the class period* is representative of the rate of pay and number of workweeks worked during the entire class period.

Moreover, Defendant provides no reasonable basis for assuming that one hour of unpaid overtime was worked on every single day that a putative class member worked 8 hours or more.[5] The Complaint does not make any such allegation. Nor does

---

[5] Defendant's 1 hour of unpaid overtime estimate for its CAFA calculations contradicts the estimate of 30 minutes of unpaid overtime that it made in assessing the amount in controversy under traditional diversity jurisdiction for Plaintiff. This contradiction drives home the arbitrary and inconsistent nature of Defendant's calculations.

1    Defendant explain how the nature of the class members' work duties would make a
2    one hour overtime estimate a reasonable assumption.  Defendant does not cite any
3    documentary evidence – such as a company handbook, work schedules, time cards, or
4    complaints from an employee hotline – to establish the propriety of its one hour
5    estimate.  *See Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460, *8-9
6    (C.D. Cal., Oct. 25, 2016) (declaration from human resources partner did not "address
7    the possible rate of meal- and rest-period violations, the number of complaints
8    Defendant received regarding the lack of meal and rest periods, Defendant's policy
9    addressing how meal and rest periods are scheduled, or anything else to provide
10   support for Defendant's assumption of 'one meal and rest period violation per
11   workweek' for every class member.")

12        In an effort to maximize its amount in controversy calculations, Defendant makes
13   an additional overtime calculation for workweeks in which putative class members
14   worked 40 hours or more.  Defendant states that there were 1,824 workweeks when
15   putative class members worked "an average of forty hours or more in a workweek"
16   during the period from January 1, 2016 through April 15, 2017.  (Dkt. No. 1, ¶ 53).
17   Without providing any rationale, Defendant asserts that it is reasonable to assume that
18   one half hour of overtime was unpaid for each of these workweeks.  Using the same
19   methodology described above, Defendant extrapolates the "data" from this limited
20   period across the entire four year class period to arrive at an assumption that there is
21   $67,590.14 in controversy for overtime hours for weeks in which 40 hours or more
22   were worked.  (*Id.*)[6]

23

24   _____

[6] As with its daily overtime calculations, Defendant's weekly overtime calculations are
25   unsound.  There is no reason why Defendant could not have provided the court with
     the actual number of weeks in which 40 hours or more were recorded.  Instead,
26   Defendant looked at each 2 week pay period from January 1, 2016 through April 15,
     2017, and averaged the hours between those two weeks to arrive at an estimate of the
27   number of weeks in which the hours worked were 40 or more.  (Dkt. No. 1-3, ¶ 12).
     Defendant provides no explanation as to why it simply could not have looked at the
28   time data for each week to provide an accurate count of the number of workweeks
     totaling 40 hours or more instead of relying on an imprecise average.

In making separate calculations of daily and weekly overtime hours, Defendant is attempting to double count the amount in controversy for unpaid overtime.  There is no legitimate basis for Defendant to make separate calculations other than to inflate them. Based on Defendant's assumptions, an employee working five 8 hour days in one week would have also worked 5.5 unpaid overtime hours.  This is by no means a conservative estimate, and the Court should disregard Defendant's assumptions as the baseless conjecture that they are.

Indeed, courts in similar circumstances have found that a one hour estimate of unpaid overtime per *week* was too speculative when not supported by any evidence. *See e.g.*,  *Ray v. Nordstrom, Inc.*, 2011 WL 6148668, 2011 U.S. Dist. LEXIS 146657, at *8 (C.D. Cal. 2011) (allegation that defendant "failed to pay 'all' California hourly employees at least some regular and overtime hours' did not support defendant's estimate that each class member missed one hour of regular pay and one hour of overtime pay per pay period); *Nolan v. Kayo Oil Co.*, 2011 WL 2650973, 2011 U.S Dist. LEXIS 72256, at *12 (N.D. Cal. Jul. 6, 2011) ("Simply assuming that every employee…worked at least one hour of overtime a week, without some facts or evidence to support these assumptions, is insufficient to meet Defendant's evidentiary burden [by a preponderance of the evidence]."); *Vigil v. HMS Host USA, Inc.*, 2012 WL 3283400, 2012 U.S. Dist. LEXIS 112928, at * 15-16 (N.D. Cal. Aug. 10, 2012) (defendant's assumption that each class member worked one hour of overtime per week was unsupported by evidence, unsupported by allegations in complaint, and did not rise to the legal certainty standard).  Here too, Defendant's overtime estimate is far too speculative to rise to the level of summary judgment type evidence.

Defendant's failure to provide competent evidence is particularly inexcusable because Defendant, as the employer, has ready access to the facts, records, and information necessary to make the requisite showing under CAFA.[7]  This is likely not

---

[7] California Labor Code §§ 226, 432, 433, and 1198.5 require that a California employer retain copies
*(Footnote continued)*

a careless omission; rather, it is a calculated strategy to invoke CAFA jurisdiction without providing any admissible evidence regarding the putative class members' claims – evidence that could later be used to expose Defendant's liability in this case.

### 3. Defendant's Meal and Rest Break Premium Calculations are Unsupported As Well

Like Defendant's overtime calculation, Defendant's calculation of the amount in controversy for meal and rest break premiums is improperly based on a snapshot of data from the proposed class period and is not supported by any evidence.

Ms. Adams asserts that from January 1, 2016 to April 15, 2017, there were 3,359 times when a putative class member's "daily average hours" worked was five hours or more. (Dkt. No. 1-1, ¶ 13). From the outset this is unreliable because not all of these days are days on which employees in fact worked more than five hours; rather they are the number of days on which an *average* of over five hours was worked. Likewise, Defendant asserts that there were 757 times when a putative class member's "daily average hours" were 3.5 hours or more. (*Id*. at ¶ 14). As with its meal period calculation, this number is over-inclusive because it includes days on which less than 3.5 hours were worked.

Defendant goes on to assume that, because of its biweekly pay periods, there were "6,718 weeks with daily average hours worked of 5 or higher" and "1,514 weeks with daily average hours worked of 3.5 or higher." (Dkt. No. 1-3, ¶¶ 13-14).

---

of employee itemized wage statements, attendance records, performance evaluations, and documents relating to the obtaining or holding of employment. In ruling on motions to remand, the Court should consider "which party has better access to the relevant information." *Amoche v. Guarantee Trust Life Insurance Company*, 556 F.3d 41 (1st Cir. 2009); *see also Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1164, n. 3 (11th Cir. 2006) ("Defendants have better access to information about conduct by the defendants, but plaintiffs have better access to information about which plaintiffs are injured and their relations to various defendants.") Moreover, Plaintiff has no burden in these circumstances and is under no obligation to put forth any evidence. *See Birkenbuel v. M.C.C. Constr. Corp.,* 962 F. Supp. 1305, 1306 (D. Mont. 1997) ("MCC complains that 'Birkenbuel offers no evidence regarding the amount of his interim earnings, or indeed any evidence that he has or ever will earn interim income.' However, it is MCC, not Birkenbuel, which has the burden of proof.").

Defendant multiplies each of these workweek figures by 5 to arrive at 33,590 days of meal period eligible shifts and 7,570 days of rest period eligible shifts. (*Id.*).

What follows are two charts demonstrating why Defendant's assumptions are unsound:

|  | Sun. | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. |
|---|---|---|---|---|---|---|---|
| **Week 1** |  | 3 | 3 | 3 | 3 | 5.5 |  |
| **Week 2** |  | 3 | 3 | 3 | 3 | 5.5 |  |

In the first example, the average number of hours worked each week is 3.5.[8] Using Defendant's methodology, because the average number of hours worked each week is 3.5, Defendant would assume that there were 5 rest period eligible shifts each week, for a total of 10 rest period eligible shifts in this pay period. In reality, there would be, at most, just two rest period eligible shifts, because the employee in this example only worked two shifts of 3.5 hours or more.

|  | Sun. | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. |
|---|---|---|---|---|---|---|---|
| **Week 1** |  | 4 | 4 | 4 | 4 | 9 |  |
| **Week 2** |  | 4 | 4 | 4 | 4 | 9 |  |

In the second example, the average hours worked for each week is 5.[9] Using Defendant's methodology again, Defendant would assume that, because the average hours worked each week was 5, that there were 5 meal period eligible shifts each week for a total of 10 meal period eligible shifts in this pay period. In this example however, the employee would have worked a maximum of two meal period eligible shifts as the employee only worked 2 shifts exceeding 5 hours.

In addition to making baseless assumptions about the number of meal and rest period eligible shifts, Defendant assumes a 50% violation rate for meal and rest

[8] $(3 + 3 + 3 + 3 + 5.5) \div 5 = 3.5$
[9] $(4 + 4 + 4 + 4 + 9) \div 5 = 5$

1    periods.  (Dkt. No. 1, ¶¶ 58, 61).  Thus, in addition to assuming that an employee

2    working 5 eight hour days in one week has worked 5.5 hours of unpaid overtime, that

3    same employee, per Defendant's logic, would also miss 2.5 meal periods and 2.5 rest

4    periods that week.  Again, these are not conservative estimates, and Defendant does

5    not provide a single timecard, paystub, wage statement, work schedule or other

6    employee document to support the propriety of its meal and rest break violation rates.

7    Nor does Defendant provide a rationale for why it is reasonable to assume that meal

8    and rest break violations occur with this frequency.

9         The unreasonableness of Defendant's assumptions in its amount in controversy

10   calculations is evident in light of *Ibarra*.   There, the plaintiffs alleged that the

11   defendant engaged in a "pattern and practice of failing to pay" non-exempt employees

12   for working off-the-clock and therefore sought to recover premium pay for missed

13   meal and rest breaks for putative class members.  *Ibarra,* 775 F.3d at 1198.   In

14   estimating the amount in controversy, the defendant assumed "that each class member

15   missed one meal break in a 5-hour shift and that each class member missed one rest

16   break in a 3.5-hour shift."  *Id.*  While the Court noted that the defendant relied on the

17   declaration of its senior director of employee services and administration to support its

18   assumption about the number of employees, the Court found that the defendant's

19   assumption that meal and rest break violations occurred on every meal break eligible

20   and rest break eligible shift was not a reasonable assumption.  *Id.* at 1199.  The Court

21   reasoned that, while "a damages assessment may require a chain of reasoning that

22   includes assumptions, […] those assumptions ***cannot be pulled from thin air*** but need

23   some reasonable ground underlying them."  *Id.* (emphasis added).   The Court

24   highlighted the fact that "[t]he complaint alleges a 'pattern and practice' of labor law

25   violations but does not allege that this 'pattern and practice' is universally followed

26   every time the wage and hour violation could arise."  *Id.*  The Court articulated that a

27   "'pattern and practice' of doing something does not necessarily mean *always* doing

28   something." *Id.* at 1198-99 (emphasis in original).

Likewise, Defendant's assumption that meal and rest break violations occurred a combined five times per week is an unreasonable assumption because it is not based on any evidence or allegation in the Complaint.  While Plaintiffs allege a "uniform policy and systematic scheme of wage abuse," there is no allegation or indication that meal and rest break violations occurred at this rate.  (Dkt. No. 1-1, Complaint, ¶ 25).  Thus, Defendant's representations as to the amounts in controversy for meal and rest break premium pay are pure speculation.

Courts have rejected estimates similar to Defendant's. For example, in *Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460, *7-8 (C.D. Cal., Oct. 25, 2016), the Court explained:

> The allegation "Defendant failed to provide all the legally required. . . meal [and rest] periods" could also mean: (1) Defendant denied one class member one meal and rest break once per year, (2) Defendant denied a small group of class members one meal and rest period once a month, or (3) Defendant denied half the class members all meal and rest periods every week. In each of these scenarios, Defendant "failed to provide all the legally required. . . meal [and rest] periods."  Hence, there is no logical basis for the Court to assume Plaintiff means "Defendant filed to provide [each and every] legally required unpaid, of-duty meal [and rest] period [to every class member,]' as Defendant contends."

*See also Weston*, 2013 U.S. Dist. LEXIS 132930, at *17 ("…Defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week…"); *Nordstrom, supra,* 2011 U.S. Dist. LEXIS 146657, at *9 (rejecting employer's assumption that each class member missed one meal period and one rest period each pay period); *Ruby v. State Farm Gen. Ins. Co.*, 2010 WL 3069333, 2010 U.S. Dist. LEXIS 88812, at *11-12 (N.D. Cal. Aug. 4, 2010) (rejecting defendant's estimate of one missed meal break and one missed rest break per workweek because there was no basis for making this assumption based on the

19

complaint's allegations).  Here too, the Court should reject Defendant's estimates of the amount in controversy for missed meal and rest breaks because they are unsupported by the allegations in the Complaint and because Defendant has failed to introduce summary judgment type evidence supporting them.

> ### 4.  *Defendant's Maximum Penalty Calculations with Respect to Wage Statement Penalties and Waiting Time Penalties are Also Improper*
>
> #### a.  Plaintiff's Complaint Does Not Put Maximum Wage Statement Penalties in Controversy

Defendant's wage statement penalty calculations improperly assume a 100% violation rate.  Defendant argues that every wage statement is at issue because Plaintiff alleges that "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements."  (Dkt. No. 1, ¶ 63).  Defendant improperly reads this allegation to mean that every single wage statement is deficient.  While it could be appropriate to assume maximum penalties if there was evidence that every single wage statement was deficient in some manner (e.g., lacking a category of information such as an employee's social security number or employee identification number), there is no such evidence here at this time.  Rather, Plaintiff alleges that the deficiencies include "the failure to include the *total* number of hours worked by Plaintiff and the other class members."  (Complaint, ¶ 100) (emphasis added).  Plaintiff's wage statement allegations are derivative of Plaintiff's allegation that Defendant failed to pay them and the putative class members for all hours worked.  Plaintiff does not allege that Defendant failed to include a category on their wage statements for total hours worked; rather Plaintiff alleges that the number of total hours worked was not always accurate.  And Defendant does not produce any evidence suggesting that every single wage statement for every class member failed to state the accurate number of hours worked.  As a result, Defendant's wage statement penalty calculations should be disregarded.

///

b.   Likewise, Plaintiff's Complaint Does Not Put in Issue
Maximum Waiting Time Penalties

Defendant asserts that, during the three year statute of limitations, Defendant employed 411 individuals whose employment was terminated.  (Dkt. No. 1, ¶ 65). Defendant goes on to calculate the maximum thirty days of waiting time penalties for each of these individuals.  However, Defendant provided no basis for assuming that all 411 individuals were paid thirty days late.  The Court should not rely on Defendant's maximum penalty calculation without competent evidence that the putative class members could be entitled to those penalties.

The maximum penalties approach to waiting time penalties was rejected by the Ninth Circuit in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F. 3D 994 (9th Cir. 2007) and again in *Garibay v. Archstone Communities, LLC*, 539 Fed. Appx. 763 (9th Cir. 2013).  In *Lowdermilk*, Oregon law permitted employees to recover a maximum of thirty days in penalty wages for an employer's failure to timely pay wages upon termination.  *Lowdermilk*, 479 F.3d at 1000.  The defendant merely "examined company records and determined that 7,571 employees left [its] employment during the period specific in the complaint.  It then assumed that [the defendant] waited at least 30 days after termination to tender employees their final pay check, which would entitle each plaintiff to the maximum recovery."  *Id.* at 1001.  Although the defendant provided the declaration of one human resources employee to support its assumption about the number of employees, the Court found that the defendant failed to meet its substantial burden of proof.  *Id.*  The Court reasoned:

> Defendant assumes that all class members would be entitled to the maximum damages . . . but provides no evidence to support this assertion .
> . . . Many employees may have been paid only a few days late and, consequently, would be entitled to fewer days of penalty wages. . . . Again, absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy.

1   *Id.  See also Longmire v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 167463, *21

2   (S.D. Cal. Nov. 26, 2012) ("Although the Court can reasonably draw the inference that

3   each class member suffered some form of Labor Code violation at some point during

4   his or her employment, and was thus entitled to waiting time penalties, the Court is

5   unwilling to infer a maximum penalty for each plaintiff.")  *Dupre v. GM,* 2010 U.S.

6   Dist. LEXIS 95049, at *11 (C.D. Cal. Aug. 27, 2010) (The "calculation of penalties

7   depends heavily on the number of days Defendant withheld wages or wage statements

8   and Plaintiffs' missed meal or rest breaks. Without evidence supporting specific

9   numbers for these variables, the Court cannot accurately calculate the amount of civil

10  penalties to which each class member would be entitled….Therefore, the Court has no

11  basis for considering the maximum civil penalties to establish the requisite amount in

12  controversy."); *Rhoades v. Progressive Casualty Insurance Co.*, 2010 U.S. Dist.

13  LEXIS 111026, *13-14 (E.D. Cal. Oct. 7, 2010) (rejecting maximum waiting time

14  penalty calculation on ground that there was "no evidence indicating how late, on

15  average, the payments were.")

16         In *Garibay*, the Ninth Circuit again rejected an employer's maximum waiting

17  time penalty calculation, finding that the employer provided no evidence supporting

18  that assertion. *Garibay*, 539 Fed. Appx. at 764.  In applying *Garibay*, district courts in

19  California have rejected maximum penalty calculations.  *See e.g., Adams v. Medical*

20  *Staffing Network Healthcare, LLC*, 2013 U.S. Dist. LEXIS 172483, *9 (E.D. Cal. Dec.

21  5, 2013); *Weston*, *supra,* 2013 U.S. Dist. LEXIS 132930, at *12-17; *Cavazos v.*

22  *Heartland Auto. Servs.*, 2014 U.S. Dist. LEXIS 132755, at * 6-9 (C.D. Cal. Sept. 19,

23  2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608, 2014 U.S. Dist. LEXIS

24  95620, at * 7 (C.D. Cal. July 14, 2014).  In *Emmons v. Quest Diagnostics Clinical*

25  *Labs., Inc.*, 2014 WL 584393 , 2014 U.S. Dist. LEXIS 18024, at * 19 (E.D. Cal. Feb.

26  11, 2014), the Court explained that "[a] declaration stating the class size and the

27  number of pay checks issued during the years prior to this action, together with

28  assumptions as to erroneous payments for each and every employee, is not sufficient to

1  establish that the amount in controversy exceeds $5,000,000 even under the
2  preponderance of the evidence standard."

3      The Ninth Circuit's reasoning in *Lowdermilk* and *Garibay* applies here. Like the
4  defendants in those cases, Defendant has determined the number of employees who
5  have separated during the statute of limitations, and then assumed that Defendant
6  waited at least thirty days after separation to tender final payment of their wages.
7  However, Defendant provides no evidence at all to support its assumption that these
8  employees would be entitled to the maximum amount of damages. As in *Lowdermilk*
9  and *Garibay*, without evidence for its assertions, Defendant fails to establish by a
10 preponderance of the evidence that the requisite amount in controversy is met.

11            *5.  Defendant's Minimum Wage Penalty Calculations are Deficient*

12     Defendant assumes that all putative class members were not paid minimum
13 wages during every pay period for an entire year.  Plaintiff's minimum wage
14 allegations are derivative of her allegation that Defendant did not properly compensate
15 her and the other putative class members for all overtime hours worked:

16           Defendants' failure to pay Plaintiff and the other class members the
17           minimum wage as required violates California Labor Code sections
18           1194, 1197 and 1197.1.

19 (Dkt. No. 1-1, Complaint ¶ 79).

20     Labor Code section 1194 states that "any employee receiving less than the legal
21 minimum wage *or the legal overtime compensation* applicable to the employee is
22 entitled to recover in a civil action the unpaid balance of the full amount of this
23 minimum wage or overtime compensation."  (Cal. Lab. Code §1194(a)) (emphasis
24 added).  Section 1197 states that "the payment of a lower wage than the minimum so
25 fixed" "by the commission or by any applicable state or local law" is unlawful. (Cal.
26 Lab. Code § 1197).  Finally, section 1197.1 provides that any employer who pays a
27 wage less than the minimum fixed by applicable state or local law shall be subject to
28 restitution of wages. (Cal. Lab. Code § 1197.1).

Because Plaintiff's minimum wage allegations are derivative of her unpaid overtime allegations, Defendant's presumption that the putative class members are entitled to penalties for every single pay period during the statute of limitations is unsupported. Nowhere in the Complaint does Plaintiff allege that she and the class members were missing compensation for hours worked in every single pay period or that the aforementioned penalties should be factored into every pay period. As such, Defendant's factoring in of penalties for each putative class member for each pay period is not based on any summary judgment type evidence and should be disregarded.

### 6. *Defendant's Attorneys' Fee Estimate Must Also be Rejected*

As explained above, it is improper for Defendant to include in its amount in controversy calculations an assessment of attorneys' fees that have not yet been incurred, but which Defendant forecasts might be incurred over the lifetime of this litigation.

Defendant's attorneys' fees estimate is unreliable for the additional reason that it is based on the underlying impermissible speculation regarding its amount in controversy calculations for unpaid overtime, meal and rest period premiums, unpaid wage statement penalties, waiting time penalties, and minimum wage penalties. Because Defendant's calculation of fees is 25% of the amount it calculated as being in controversy for these claims, Defendant's estimate of attorneys' fees is far too speculative as well and must also be rejected.

///

///

///

///

///

///

///

## V.   CONCLUSION

As Defendant has failed to support its removal calculations with competent, summary judgment type evidence, Plaintiff respectfully requests that this Court remand this case to the Ventura County Superior Court.

Dated:  May 11, 2017                                    **LAWYERS *for* JUSTICE, PC**


By: /s/ Jill J. Parker
       Jill J. Parker
       *Attorneys for* Plaintiff